Colcock, J.
I should not be disposed to disturb the verdict, if there were any evidence on which it could be founded; for I feel no disposition to interfere with the prerogative of the jury, in deciding on facts. But in this case, it-does not appear to me that there was any evidence to warrant the verdict. The mere production of a person’s, note is not sufficient to warrant a jury to find a verdict for him who holds it. The nature of the transaction, and all the circumstances proved by the plaintiff’s themselves, shew that the note was a joint one of the plaintiff’s testator and defendant j it was signed by the defendant only, because this was necessary to comply with the rules of the bank. Can there be a doubt but that it was an accommodation note ? and, if so, why should the defendant pay the whole ? Does not the plaintiff’s testator shew this by charging only a part of the numerous discounts which must have been paid on it? But the uneontradicted evidence of Mr. Maine, who said that the testator, in his life-time, told him that the account should not be made out, for that the defendant owed him nothing, is certainly conclusive, when taken together with the circumstances which go to shew that the note was an accommodation note. I cannot but think it a verdict against evidence, and, therefore, I am in favour of granting a new trial.
Nott, J.
It appears that Mr. Hart gave a note to Mr. Simons, plaintiff’s testator, for the sum of five hundred dollars, for the accommodation of Mr. *577 •Südward Rutledge, which note was endorsed by Mr. Simons, for the purpose óf discounting at the bank, in order to effect the object for which it was originally drawn. After several renewals, Mí. Hort paid three hundred dollars towards discharging it, and Mr. Simons paid the balance and took up the note. This action is now brought by the executors of Mr. Simons, to recover from Mr. Hort the money so paid, as so much paid to his use. The defence set up by Mr. Hort is, that the note was given jointly by him and Mr. Simons, for the accommodation of Mr. Rutledge, and, therefore, he ought not to be compelled to pay more than he has already paid; so that the only question, is, whether this was really a joint transáction, or whether it was á contract of Mr. Hort only. The evidence has been submitted to a jury, and a verdict is found for the plaintiffs, and 1 do not see any good grounds for setting that verdict aside. The legal presumption arising from the face of the papers, is in favour of the plaintiffs. Mr. Hórfs note would not have been discounted at the bank without an indorser. The presumption, therefore, is, that, Mr. Simons indorsed it for the accommodation of Mr. Hort. It also appears that Mr. Hort has.paid three hundred dollars, which is expressed in a receipt produced by him, to be so much towai’ds paying off the note. Now it is not to be presumed, that he would have paid three hundred dollars towards discharging a note for five hundred dollars, of which he was only liable to pay one half. On the other hand, a witness testifies, that at one time when he was drawing -off accounts for Mr. *578 Sinions, he asked him, if he should make out Mr, Horts account, Mr, Simons replied he had no account against Mr. Uorí; that Mr. Hort owed him nothing. But it is to be observed, that Mr. Simons was a merchant, and this witness was a clerk in his counting house, and it is probable he alluded to his-book accounts when he said Mr. Hort owed him nothing. This claim is of a different character, although a memorandum of it is found in his books y; at all events, it was a proper question for the .con - sideration of a jury, and I am opinion their verdict ought not to be disturbed.
Smith, J.
This was an action of assumpsit, founded on the following circumstances:
The defendant, to accommodate the late governor E. Rutledge, had given his note to the plaintiff’s testator for $500, and obtained his endorsement to give it a currency at the bank. Many renewals were had in the same way. Mr. Rutledge never paid the money; and, finally, Mr. Hort paid Mr. Simons three hundred dollars, and Mr. Simons paid the balance, and brought suit by his executors to recover this balance as so much money paid to the use of Mr. Hort. At the trial, it was contended by the plaintiff’s counsel, that Simons was merely an indorser, at the request of Mr. Hort, to bring his note within the banking rules, and that he had no part in the accommodation of Mr. Rutledge. On the part of the defendant, it was contended that Mr. *579 Simons was equally concerned in the aecommoda- * ** tion, therefore, ought to be an equal loser; and .ought not to recover it against the defendant. But there was no sort of proof that Simons intended tó join in the accommodation any further than he had done, on the application of Mr. Hort alone. The jury found a verdict for plaintiff’s; and I can see no reason for setting it aside. I am, therefore, against the motion.
Grimke, J.
This was an action brought by the plaintiffs against defendant for the recovery of a sum of money, which plaintiffs claimed of defendant as having been advanced on his account. The circumstances were that a friend of plaintiff’s'testator^ and the defendant being in want of money, defendant was induced to give a note of 8500 ; and plaintiff testator, who was director of the Branch Bank, to indorse, and get it passed by the Board. This accommodation note had been given previous to the 13th of January, 1800, and had been continued by renewals to the 15th of March, 1802. The question was, whether the sum borrowed, was to be paid by the drawer, defendant, and indorser, plaintiff’s testator, jointly, or by the drawer alone. It appeared in evidence produced by the defendant, and in his hand-writing, that plaintiff’s testator had signed a receipt on the 13th of January, 1800, in these words : (i Received of William Hort, his note of this date for 8500, payable to my order, and for discount in the National Bank, being another renewal for a sum originally borrowed in August, *580 1798, for the use and accommodation of the honour» able Edward Rutledge, and at his request, continued by renewals to this time.” Signed, Idiomas, Simons. It also appeared in evidence* that the last receipt for renewal was dated 15th of March, 1802, two days previous to which, Mr. Hort had paid 8300, towards taking up this note, as appeared by a receipt written by himself.. The defendant also proved by a Mr. Maine, who was a clerk to plaintiff’s testator, that the said Maine, when making out a number of accounts for Mr. Simons, asked him, if he should draw out the one which appeared in his books against the defendant} to which he,. Simons, replied, that defendant owed him nothing. It was also in evidence, that Simons had purchased produce belonging to Mr. Hort, knowing it to. be his, and yet proposed no discount, although the circumstances of Simons were embarrassed, and those of defendant very good, as he was always able to pay whatever debts he had contracted with much convenience to himself. It was argued on this evidence, that the deceased was equally bound to pay that note as defendant} that he, Hort, had already paid his proportion, and more than his proportion, as appeared by the payment of $300, and that the evidence of Maine confirmed the nature of this transaction^
On the other hand, it was contended that Simons was not originally engaged in the borrowing of the money, as appeared by the first receipt given by Mm, dated 13th January, 1800, in which the nature- *581 of the transaction was expressed ; for that if he, Si-mons, had been originally concerned in the note,' he would, at that time, have signed no other receipt than such a one as was produced on the trial: all of' * 7 which receipts, subsequent to this first, only expressed, {i Received Mr. Hart’s note for renewal.” This first note then differing so materially from all the others, proved that the debt had been incurred before .Simons had become an indorser for the defendant. It was also urged, that defendant having paid more than one half of the note to Mr. Simons, was a sufficient answer to that part of the argument, which went to shew that the debt was to be equally paid between them; as Mr. Hort, who was a man very correct in business, never would have overpaid his proportion, at least without taking some memorandum in writing from Simons, by which he eould prove, that having paid his half, he was not accountable for the other part; and the very circumstances given in proof of the embarrassed situation of Simons> showed strongly, that the payment defendant made was on his own account, and not an advance for Si-mons, as Jhe was not bound to make any advances for him; and that he certainly would not have done so, when he knew of the distressed situation of Si-mons. With respect to Simons not calling on defendant for full payment, when he, himself, was in distressed circumstances and defendant in prosperous ones, it may be attributed to the certainty of his being able hereafter to get paid, whenever he should eventually be compelled to call on defendant; and that he was induced to forbear pressing defendant *582 f°r payment, because he knew it was payment for the debt of another and not his own; and that whilst he, Simons, was not obliged to pay the amount t0 bank, but could still go on discounting for the balance with the defendant, he was under no necessity to press the defendant. That with respect to the testimony of Mr. Maine, there must have been some mistake, some misapprehension between the parties. That Mr. Simons being a factor.or agent, and knowing the defendant owed him nothing on that account, might have answered as he did, referring to that circumstance alone, and not to the negotiation of the notes, which were of a confidential nature, and which he did not mean to be touched but by himself. It appears further from the brief, which the judge presiding at the trial has reported as correct, that the counsel for the defendant considered the ease so clear under the testimony produced, that they did not address the jury ; and that the judge who tried the case, viewed it in the same light, and so charged the jury. But the jury, considering all the circumstances of the case, found a verdict for the plaintiffs.
It is evident from the testimony adduced on both sides, that this is not one of those very clear cases, wherein all mankind will agree at once what verdict would be proper; but it seems to be a subject of considerable difficulty, and which, perhaps, can never be fully explained. It does not appear satisfactorily to my mind from the evidence, that Mr. Simons was not one of the original borrowers of this *583 money ; and there is nothing in the evidence after-wards, which goes to shew that he was ever considered by defendant,, as liable for the one half of the debt. The very receipts which defendant produ-eed, and his payment of 8300, which is more than one half of the sum borrowed, evinces this. With respect to Mr. Maine’s evidence, he may be mistaken ; he may have misunderstood Simons in his reply to him; but when his evidence is contrasted with that of the receipt in Simons’ book, it is certain more credit must be given to the book than to Mr. Maine’s testimony. Maine proves that a money transaction existed between these individuals, and he proves also that it was in Simons’ books; the receipts of Simons and defendant, produced at the trial, corroborate these facts. Which then is. likely to be mistaken, the books of Mr. Maine ? The jury have said the latter. In a caste, therefore, where there is evidence on both sides, and where that evidence is doubtful, I should be loth to disturb the verdict of the jury; but, particularly, where my opinion, under all the circumstances of the case coincides with the verdict, and when I cannot see that injustice has been done thereby.